Gershengorn, Wendie I., J.
The plaintiff, Robert Ferola (“Robert” or “plaintiff), has brought this suit individually and as co-executor of his father’s estate against defendant Allstate Life Insurance Company (“Allstate” or “defendant”), his father’s annuity provider, under various legal theories for recovery of funds his father used to purchase an annuity. Effectively, Robert alleges that Allstate, through an insurance agent, wrongfully deprived his father, John Ferola (“John”), of his life savings by encouraging him to purchase a product wholly inappropriate for someone in his father’s position. Robert alternatively seeks recovery of the remainder of the alleged ten years of *61 guaranteed annuity payments. Allstate counters that John got what he bargained for, and that it would therefore be inappropriate for this Court to order the return of the remainder of the principal invested through the annuity. Allstate also argues that award of the remainder of the payments to finish out the alleged ten-year annuity term would be inappropriate given that the contract documents, according to Allstate, provide for payments for the life of the annuitant only and not for a minimum of ten years. Allstate further argues that the actions of the Citizens Bank agent who sold John the annuity cannot be attributed to Allstate.[2]
Now before the Court are Allstate’s motion for summary judgment and Robert’s motion for partial summary judgment as to his claims for violation of General Laws, chapter 93A, and negligent misrepresentation.[3] Further before the Court are the parties’ motions to strike certain facts the parties have alleged as parts of their motions for summary judgment. For the reasons discussed below, the defendant’s motion for summary judgment is ALLOWED IN PART and DENIED IN PART, the plaintiffs motion for summary judgment is DENIED, and the parties’ motions to strike are DENIED.
BACKGROUND
In the summer of 2000, when John Ferola (“John”) was 72 years old, his son, Robert Ferola (“Robert”), brought him to see a financial planner at the Citizens Bank (“Citizens”) branch in Somerville. Over the course of the summer, the Ferolas met three times with James Holway (“Holway”), a financial advisor employed by Citizens Bank. They discussed investment objectives and investment options. One investment objective was to shield John’s assets from the state in the event that he had to go into a nursing home.[4] Another was long-term growth. Holway Deposition at 140; see also Deposition of Robert J. Ferola at 113 (describing one investment objective as better return on investment than a savings or checking account would provide). One option Holway recommended was the Putnam Allstate Advisor Variable Annuity (“annuity”), which Holway had never sold before. He indicated that this option would give John an income stream for as long as he lived, and for a minimum of ten years, with the remainder of guaranteed payments to go to the beneficiaries in the event that John died before the expiration of the ten-year term.[5] Deposition of Holway at 59. See also Deposition of Robert J. Ferola at 132 (stating that it was Robert’s understanding at the time his father purchased the variable annuity that it would provide ten years’ worth of monthly payments for his father); id. at 137 (stating that Robert understood that, at the time of John’s death, Robert could choose to receive either the account value minus the withdrawals or could continue to receive John’s monthly checks for the remainder of the ten-year period); id. at 290. After being provided with a prospectus for the annuity (the “Prospectus”), John purchased the annuity on July 19, 2000.[6]
Ordinarily, there are two phases of an annuity. During the first phase, the annuitant makes regular payments investing funds, tax-free, in the annuity. During the second phase, the annuitant receives a monthly payment. One common reason for investment in an annuity is that it permits the annuitant to defer the payment of tax on the funds invested in the annuity and thereby permits the funds to grow tax-free. It is therefore common for annuitants to invest during the time they are working and to receive the benefit of the payout of funds once they retire.
The annuity at issue in this case appears to be structured with those goals in mind. In particular, presumably on account of the fact that the average investor is saving for retirement and does not want to lose all monies invested in the event that he dies before receiving any funds, the annuity provides that if the annuitant dies before the start of payments to him, the funds invested to that point will be paid to a beneficiary selected (and identified) by the annuitant. Once the payments begin, however, the annuitant is paid according to the term specified by the annuitant.
John was older,[7] however, and had already accumulated his savings. John invested $224,817, the overwhelming majority of his life savings, in the annuity in a one-time payment. By its terms, the annuity provided that Allstate would invest the funds in the mutual fund accounts John had chosen and would yield a minimum rate of return of 3.00 percent.
The determination of the length of the payments is made by election. Under the annuity at issue here, the choices are: (1) Life Income with Guaranteed Payments; (2) Joint and Survivor Life Income with Guaranteed Payments; and (3) Guaranteed Number of Payments. The first option provides for payments “for as long as the Annuitant lives” plus, “(i]f the Annuitant dies before the selected number of guaranteed payments have been made, we will continue to pay the remainder of the guaranteed payments.” The second option provides for payments for as long as one of the Annuitants is alive and also provides for continued payments if the number of guaranteed payments has not yet been made. The third option is not dependent on the life of the Annuitant but rather guarantees payment for a specified number of months.
Holway filled out the Annuity Income Options Election Form (“Election Form” or “Income Election Form”) on John’s behalf. On the form, Holway selected the option “Income for Life with Guaranteed Payments.” In the blank provided after the words “Income for Life with Guaranteed Payments for_ (5-30) years,” Holway added the words “for life expectancy.” To the side of the option he had selected, he added an arrow and wrote “Upon Death Pass to beneficiaries.”[8] On the Application, John identified Robert as the sole Joint Owner and sole Beneficiary. Allstate representatives *62 walked Holway through the process of filling out the election forms because Holway had never sold the annuity before.[9] Holway did not read the Prospectus, Holway Deposition at 149, but rather relied on the Allstate representatives to help him understand the terms of the annuity and complete John’s application form, id. at 63, 64. Holway filled out the form “exactly the way that [Mr. Knoxx] had indicated that it needed to be filled out...” Id. at 148.
Throughout, the Prospectus refers to the fact that, upon the annuitant’s death, the owner or beneficiary is entitled to step into the shoes of the annuitant. On Bates-stamped page 136, the contract states, “As the Contract Owner, you exercise all of the rights and privileges provided by the Contract. If you die, any surviving Contract Owner or, if there is none, the Beneficiary will exercise the rights and privileges provided by the Contract.” Prospectus, at 6. Under the section entitled “The Contract," the Prospectus describes the Beneficiary as “the person who may elect to receive the death benefit or become the new Contract Owner if the sole surviving Contract Owner dies before the Payout Start Date” or, “if the sole surviving Contract Owner dies after the Payout Start Date,” the recipient of “any guaranteed income payments scheduled to continue.” Bates-stamped page 142. Furthermore, if the annuitant did not name a beneficiary, the Prospectus indicates that the beneficiary would be determined according to the following order: (1) spouse, if living; (2) surviving children equally, if the spouse is no longer living; or (3) the annuitant’s estate, if the annuitant dies without a surviving spouse or surviving children. Id. Although there is an entire section devoted to “Death Benefits” in the Prospectus, it discusses payments only prior to the Payment Start Date and does not describe payments to a beneficiary after payment to the annuitant has started.
Bates-stamped page 151 of the Prospectus describes the different income plans available. Although it states that each of the plans is “available to provide” fixed income payments, variable income payments, or both, none of the plans’ titles describe plans with anything other than guaranteed payments. Furthermore, the Prospectus states that the default plan, if none is selected, is Income Plan 1 — -Life Income with Guaranteed Payments for 10 years. After a description of each of the individual plans, the “income payments” section of the Prospectus contains further information about all of them, although the way it is situated on the page, one could argue that it is not clear that it pertains to any income plan but Income Plan 3. It is therefore not certain that an annuitant selecting Income Plan 1 or 2 would necessarily read it. If the annuitant did, however, he would be notified that choosing a higher number of minimum payments generally will result in lower income payments. The paragraph continues with the following example: “For example, if you choose an Income Plan with payments that depend on the life of the Annuitant but with no minimum specified period for guaranteed payments, the income payments generally will be greater than the income payments made under the same Income Plan with a minimum specified period for guaranteed payments.” Id. at 151.
A disclaimer is contained in the following paragraph. The paragraph begins, “If you choose Income Plan 1 or 2, or, if available, another Income Plan with payments that continue for the life of the Annuitant or joint Annuitant, we may require proof of age and sex of the Annuitant or joint Annuitant before starting income payments, and proof that the Annuitant or joint Annuitant are alive before we make each payment.” The disclaimer states, “Please note that under such Income Plans, if you elect to take no minimum guaranteed payments, it is possible that the payee could receive only 1 income payment if the Annuitant and any joint Annuitant both die before the second income payment, or only 2 income payments if they die before the third income payment, and so on.”
On the Confirmation and Income Payment Schedule (“Confirmation”) from Allstate, the forms identified Robert as the other Owner of the annuity. The contract states, “If any Owner dies during the Payout Phase, the remaining income payments will be paid to the successor Owner as scheduled.” The contract further states that, “[i]f we do not receive a written choice of Income Plan from you at least 30 days before the Payout Start Date, the Income Plan will be Life Income with Guaranteed Payments for 120 months.” In addition, all the examples provided in the contract use the term of 120 months of guaranteed payments. The Income Payment Schedule provided that “Payments of $1729.67 monthly,” noted to bé variable, “will begin on August 28, 2000 and continue for the life of the Annuitant.”
John’s payments commenced on August 28, 2000. Within approximately three months, he entered a nursing home. His payments continued until his death in September 2002.
After his father’s death, Robert filed a claim to collect the death benefits under the annuity. Although Allstate determined that, under the policy as written, it did not owe Robert, the beneficiaiy, any payment, it reissued the policy on February 10, 2003 as one guaranteeing payments for five years and paid Robert the corresponding death benefit in a lump sum. Robert argued that he and his father had thought they were getting a minimum of ten years’ worth of payments and brought this action against Allstate on March 24, 2005.[10]
DISCUSSION
Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party, Jupin v. Kask, 447 Mass. 141, 143 (2006), citing Coveney v. President & Trs. of the Coll. of the Holy Cross, 388 Mass. 16, 17 (1983); see Simplex Techs., Inc. v. Liberty Mut. Ins. Co., 429 Mass. 196, 197 *63 (1999), the Court determines that “there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c); DuPont v. Commissioner of Corr., 448 Mass. 389, 397 (2007). The moving party bears the initial burden of “establishing that there are no genuine issues of material fact, and that the non-moving party has no reasonable expectation of proving an essential element of its case.” Miller v. Mooney, 431 Mass. 57, 60 (2000). See also Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The moving party may satisfy its burden by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the non-moving party has no reasonable expectation of proving an essential element of his case at trial. Flesner, 410 Mass. at 809; Kourouvacilis, 410 Mass. at 716 (adopting reasoning contained in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), that “the burden on the moving party may be discharged by ‘showing’ . . . that there is an absence of evidence to support the nonmoving party’s case”). If the moving party has carried its burden, and the plaintiff has not responded with specific facts to establish a genuine, triable issue, the court grants the motion for summary judgment. Community Nat’l Bank v. Dawes, 369 Mass. 550, 554 (1976); see Ng Bros., 436 Mass. at 644 (stating that, even where the facts are disputed, “summary judgment is still available if the party with the burden of proof at trial. . . fails to present in the summary judgment record, taking everything it says as true and drawing all reasonable inferences in its favor, sufficient facts to warrant a finding in its favor”), citing White v. University of Mass. at Boston, 410 Mass. 553, 557 (1991).
I. Standing
Allstate first argues that Robert does not have standing to raise claims to recover the initial sum invested in the annuity or additional years of payment under the terms of the annuity because John, the purchaser, is deceased, and only the executor of the estate has the right to raise the claims. According to the summary judgment record, however, although Robert initially resigned as executor, he was then reappointed as co-executor. Furthermore, Robert, a third-party beneficiary of the contract, has standing as to the contract and related claims. See Rae v. Air-Speed, Inc., 386 Mass. 187, 195 (1982) (recognizing principle of law that third-party beneficiary of a contract may maintain an action for breach of the contract). The Court will not dismiss these claims on the ground of lack of standing.
II. Breach of Contract
Plaintiff bases his claim for breach of contract on Allstate’s alleged breach of the oral and written express and implied agreements, including the reissued annuity agreement, through which, plaintiff asserts, Allstate represented that the annuity was suitable for the achievement of John’s investment objectives. In asserting this claim, plaintiff appears to rely on advice and oral statements by Holway concerning the terms of the annuity and also on the instructions by Allstate representatives as to how to fill out the form in order to obtain income guaranteed for life with a minimum of ten years of guaranteed payments. Plaintiff also argues that the annuity entitles him to death benefits, or that it is ambiguous and that the extrinsic evidence indicates that he is entitled to death benefits. Defendant counters that the unambiguous plain language of the annuity contract, which governs the terms of the annuity, permits payments for life only with no death benefit. Defendant further argues that Holway’s oral representations cannot alter the terms of the annuity contract because Holway was not Allstate’s agent, so that those representations cannot be attributed to Allstate.
A. Implied Contract
Plaintiff first asserts that Allstate entered into an implied contract that the annuity product John selected was suitable for his investment objectives. It appears that the plaintiff is arguing that the sale of the annuity, or perhaps the representations of Allstate representatives instructing John as to how to fill out the form, produced this implied contract or implied contract term. The Court cannot, based on the facts as alleged, find that Allstate entered into an implied contract with John that the investment would be suitable. In this case, there is no evidence that Allstate intended to enter into an implied contract with John that Allstate stood behind the product as one that would advance his investment objectives. Plaintiff cil-leges that Holway, not Allstate, advised John concerning investment vehicles appropriate to serve his financial goals. Holway was not a representative of Allstate but rather was employed by Citizens. Holway’s action of advising John thus cannot be attributed to Allstate. Nor can Allstate’s only actions involved in this transaction — of advising Holway concerning how to fill out the form to obtain a minimum of ten years of guaranteed payments — serve as a basis for finding that Allstate entered into an implied contract with John stating that the investment would be suitable. The allegations do not indicate that Allstate purported to provide financial advice to John but merely that it was the seller of the product. Plaintiff has not provided any authority, nor is the Court aware of any, to support the proposition that the seller is liable to the buyer for the suitability of the seller’s product for the buyer’s use. Plaintiff cannot maintain a claim for breach of contract on this basis.
B. Express Contract
Plaintiff next asserts that Allstate breached an express agreement by selling John a product that was unsuitable for his investment objectives and by failing to provide a death benefit corresponding to the ten years of guaranteed minimum payments to which Robert alleges he is entitled pursuant to the express *64 contract. Plaintiff argues that the express contract includes the oral representations of Holway and Allstate representatives that the annuity was suitable for John and that he was guaranteed a minimum of ten years of payments, to be paid to his beneficiary in the event that he died before receiving them.
Plaintiff cannot sustain his claim for breach of express contract on the basis of the alleged unsuitability of the annuity. Plaintiff identifies neither a statement by an Allstate representative nor any term in the annuity which states that the annuity would be suitable for John. As stated above, Holway’s financial advice cannot be attributed to Allstate.
Plaintiff may, however, prevail on his claim for breach of express contract on the basis of Allstate’s failure to pay him a death benefit in the amount of the remainder of the payments for the ten-year term. The interpretation of a contract is a question of law for the Court. Quinn v. Mar-Lees Seafood, LLC, 69 Mass.App.Ct. 688 (2007). Where the plain language of a contract is ambiguous, the Court may consider extrinsic evidence to resolve the question of the contract’s meaning in light of the intentions of the parties at the time of the formation of the contract. President and Fellows of Harvard Coll. v. PECO Enrgy Co., 57 Mass.App.Ct. 888, 895-96 (2003).
The question the Court must answer is whether, if the annuitant fails to specify on the Income Election Form a particular number of months of minimum guaranteed payments under Income Plan 1, he is necessarily not entitled to any minimum number of guaranteed payments, and specifically whether the annuity contract is susceptible of more than one reasonable interpretation. The contract at issue here is composed of the Prospectus taken together with the Income Election Form, the Confirmation and Income Payment Schedule, and the annuity contract delivered to John in confirmation of his purchase of the annuity. The terms contained in the Prospectus detailing the Income Plans taken together with John’s selection of an income plan are instructive. First, the income plan John selected, like all the income plans, included in its title the phrase “with guaranteed payments.” His selection was a plan entitled “income for life with guaranteed payments.” All the examples and illustrations provided show a ten-year minimum guaranteed payment period. Moreover, the documents indicate that the default period, if none is selected, is 120 months. According to this language, one might reasonably conclude that an annuitant selecting the “income for life with guaranteed payments” plan was selecting income for life with some definite number of guaranteed payments, and one might even reasonably conclude that ten years of minimum guaranteed payments is the number the annuitant gets if he does not select some other number of years of minimum payments. Furthermore, taken together with John’s Income Election Form, on which he identified a beneficiary, and on which he requested minimum payments “for life expectancy... [u]pon [d]eath [p]ass to beneficiaries,” it is not at all clear that the contract means that Robert, as John’s beneficiary, is not entitled to payments for a minimum of ten years. It is possible that the contract means that John was entitled to payments for his life expectancy, as a 72-year-old male in 2000; that he was entitled to payments for the number of years corresponding to John’s subjective belief concerning his own life expectancy; for ten years as the default where John failed to identify a specific number; or for zero years where John failed to specify a specific number. The contract is ambiguous on this point.
Nor is the language provided in the alleged disclaimer to the contrary. The Prospectus states: “Please note that under such Income Plans, if you elect to take no minimum guaranteed payments, it is possible that the payee could receive only 1 income payment if the Annuitant and any joint Annuitant both die before the second income payment, or only 2 income payments if they die before the third income payment, and so on.” In light of the rest of the language contained in the Prospectus and other documents, it would be reasonable to conclude that this eventuality occurs only if an annuitant specifies that he would like to receive a guaranteed minimum number of payments of zero years. It may also be reasonable to conclude, as Allstate urges, that a failure to identify a specific number of years on the Income Election Form means that the annuitant is entitled to payments for life only.
Nor does the Income Payment Schedule provide clarity on this point. It states: “Payments of $1,729.67 monthly will begin on August 28, 2000 and continue for the life of the Annuitant.” However, it is not clear, when considered in conjunction with the Annuity Certificate — which states that a beneficiary will be chosen for the annuitant, according to a set order of relations, if he fails to specify one; that the default income plan is life with guaranteed payments for 120 months; and which contains illustrations showing only annuities with guaranteed payments for a minimum of 120 months — that John is not entitled to a minimum number of guaranteed payments, to be paid to his beneficiary if he dies before the 10-year guaranteed minimum payment term has expired. The Court notes, in particular, that the form does not identify John’s beneficiary as “none” or otherwise indicate that John failed to select a beneficiary. If he really had identified a beneficiary and had selected a plan that was incapable of ever permitting a beneficiary to collect, a reasonable person might expect that, since John’s selection of a beneficiary had failed, Allstate would notify him of that fact on the Income Payment Schedule. A finder of fact could determine that a lack of any indication that John had failed to select a beneficiary militates in favor of a finding that John had selected a plan which included some number of minimum guaranteed payments. Because the meaning of *65 the contract is ambiguous, the Court leaves the resolution of this claim to the finder of fact.
II. Breach of the Implied Covenant of Good Faith and Fair Dealing
Plaintiff next claims that Allstate breached the implied covenant of good faith and fair dealing. The plaintiff does not explain how the defendant’s actions could be construed as constituting a violation of the implied covenant of good faith and fair dealing.
The covenant of good faith and fair dealing is implied in every contract. Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 473 (1991). “The implied covenant of good faith and fair dealing provides ‘that neither party may do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.’ ” Owen v. Kessler, 56 Mass.App.Ct. 466, 471 (2002), quoting Anthony’s Pier Four, 411 Mass. at 471.[11] However, the implied covenant of good faith and fair dealing may not be invoked to create rights and duties not otherwise provided for under the contract. Uno Rests., Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004). A claim for simple failure to perform the terms of the contract does not state a claim for breach of the implied covenant of good faith and fair dealing. See Sheehy v. Lipton Indus., Inc., 24 Mass.App.Ct. 188, 194 n.5 (1987) (“[The] covenant pertains to bad faith in the performance of a contract, not in its execution”).
The plaintiff here cannot sustain a claim for breach of the implied covenant of good faith and fair dealing. The question whether recovery is available is governed by the terms of the contract. If the plaintiff can show that payments that he did not receive were due him under the contract, he has stated a claim for breach of contract, not breach of the implied covenant of good faith and fair dealing. [12]
IV. Conversion
Plaintiff bases his claim for conversion on the assertion that, upon John’s death, Robert was entitled to a return of the full principal amount invested plus interest. Plaintiff Ferola’s Statement of Disputed and Not Disputed Facts and Law (i) in Opposition to Allstate’s Motion for Summary Judgment, and (ii) in Support of Ferola’s Cross Motion for Summary Judgment on Counts IV and VIII (“Pl.’s Opp. to Def.’s Statement of Facts and Legal Elements”) ¶¶46, 145. Plaintiff argues that Allstate’s refusal to return this amount in response to plaintiffs demand constitutes conversion. Allstate argues that plaintiffs claim for conversion should be dismissed because it held the funds not wrongfully but pursuant to a legitimate transaction and because this claim is barred by the statute of limitations.
Assuming arguendo that the facts alleged support a claim for conversion, the claim duplicates plaintiffs breach of contract claim. Because the plaintiff cannot recover under both theories, see Szalla v. Locke, 421 Mass. 448, 455 (1995) (remanding claims to Superior Court for election by plaintiff from among damage awards adjudged duplicative), the Court denies plaintiffs claim for conversion.
V. Misrepresentation
Allstate moves for summary judgment of plaintiffs claims for misrepresentation. Plaintiff cross moves for summary judgment of his claim for negligent misrepresentation. Plaintiff bases his claim for misrepresentation on statements made in the Prospectus and other written materials provided by Allstate and on the statements allegedly made by Allstate through Holway that the plan the plaintiff was selecting included a minimum of ten years of guaranteed payments. Plaintiff also bases his claim for misrepresentation on the alleged fact that the product Allstate sold John was unsuitable for him. Finally, plaintiff bases his claim for misrepresentation on the action of Allstate in reissuing the annuity as one with five years of minimum guaranteed payments because, according to the plaintiff, this constitutes a misrepresentation of the number of years of minimum guaranteed payments the original plan was supposed to provide.
Allstate argues that plaintiffs claims are barred on statute of limitations grounds because more than three years have elapsed since the alleged misrepresentations were made. Even if the statute of limitations has not expired, Allstate argues, the plaintiff cannot prevail because the Prospectus and other written documents contain no misrepresentations of material fact and because John’s reliance on statements made by Holway was not reasonable in light of the terms contained in the written documentation to the contrary. Allstate further argues that John was notified that the plan he had selected was for life only when he received the August 28, 2000 confirmation of terms.
A. Statute of Limitations
Allstate first argues that the three-year statute of limitations governing tort claims bars the plaintiffs claim for misrepresentation. Allstate argues that the misrepresentation occurred in 2000, more than three years after the plaintiff filed his claim.
Plaintiffs claim for misrepresentation is not barred by the applicable statute of limitations. The applicable statute of limitations is three years after the cause of action accrues. G.L.c. 260, §2A; Kent v. Dupree, 13 Mass.App.Ct. 44, 47 (1982). Rather than looking to the date of the misrepresentation to determine accrual, Massachusetts courts look to the date on which the plaintiff could first have discovered the misrepresentation. Kent, 13 Mass.App.Ct. at 47. Allstate argues that the language contained in the Prospectus and other contract documents put John on notice that he did not elect a plan containing a minimum number of payments. The question of whether the Prospectus and other documentation put John on notice of the *66 plan he selected, however, cannot be resolved on summary judgment. A reasonable finder of fact could find that the Prospectus and other written documents did not make clear that failure to specify a definitive number of years of guaranteed payments on the Income Election Form would result in no minimum number of years of guaranteed payments. A reasonable finder of fact could also find that, without specifically notifying John that his beneficiary selection had failed or otherwise providing some express indication that the minimum number of years of guaranteed payments was zero, especially in light of the way in which John completed the Income Election Form— which identified a beneficiary and indicated that the remaining guaranteed payments were to be paid to a beneficiary, the Income Payment Schedule did not put John on notice that he would not receive a minimum number of guaranteed payments. According to the facts as alleged by plaintiff, a reasonable jury could find that neither John nor plaintiff could have discovered the misrepresentations until John died and his beneficiary did not receive continuing payments. Because the Court determines that, at this stage, it cannot find that John could have discovered the particulars of his plan before Allstate failed to make continued payments to his beneficiary, the Court cannot determine at this stage that plaintiffs claim for misrepresentation is barred on statute of limitations grounds. Accordingly, the Court considers the merits of the claim below.
B. Alleged Misrepresentations
1. Prospectus and Contract Documents
The plaintiff argues that the Prospectus and contract documents contain the following misrepresentations. First, that the Prospectus describes the existence of a death benefit without exception. Second, that the titles and description of the income plans contained in both the Prospectus and the certificate all describe plans with a death benefit, and that neither the Prospectus nor the certificate plainly states, as to any plan, that there is no death benefit whatsoever. Third, that the illustrations all show ten years of guaranteed minimum payments. Although Allstate conclusively asserts that “there were no misrepresentations made by Allstate (and Mr. Holway’s representations cannot be imputed to Allstate),” Def.’s Mem. at 14, Allstate does not provide any argument in support of the allegation that the written document did not contain misrepresentations.
To establish a claim for fraudulent or negligent misrepresentation, “the plaintiff, at a minimum, must establish that the defendant ‘made a false misrepresentation of material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage.’ ” Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 458 (2002), quoting Danca v. Taunton Sav. Bank, 385 Mass. 1, 8 (1982). “Fragmentary information may be as misleading ... as active misrepresentation, and half-truths may be as . . . actionable as whole lies ...” Kannavos v. Annino, 356 Mass. 42, 48 (1969) (quotations and citation omitted). “It is sufficient to show ‘proof of a statement made, as of the party’s own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge’; actual intent to deceive on the part of the defendants need not be shown.” Russell, 437 Mass. at 458.
The Court cannot, at this juncture, determine whether the written documentation provided to John supports a claim of misrepresentation. The question of whether that written documentation taken as a whole is sufficiently misleading to constitute a misrepresentation is a question for the finder of fact. A reasonable jury could find that the Prospectus is misleading as to the terms of the annuity John selected. A reasonable jury could also find that the documents were misleading as to whether failure to select a minimum number of years did not guarantee an annuitant the default of ten years of guaranteed payments. Alternatively, a reasonable jury could determine that the disclaimer contained in the Prospectus does clearly disclose that the income plan John selected could have no minimum number of guaranteed payments and that a failure to specify a minimum number of years of guaranteed payments on the Election Form results in no minimum number of guaranteed payments. The question as to whether the written documentation supports a claim for misrepresentation cannot be resolved on summary judgment.
Nor does the Income Payment Schedule, confirming John’s choice of plan, alter this result. Allstate argues that, even assuming the documentation and statements by Holway could be considered misrepresentations as to what benefits the annuity provided, John should have been on notice that he was mistaken that he had selected a plan which included payments for a minimum of ten years based on the August 28, 2000 confirmation Allstate sent concerning the plan he selected. However, to the extent that John relied on the written documentation as confirmation of what he had chosen, the question whether the Income Payment Schedule put John on notice that the terms of his annuity did not include a minimum number of guaranteed payments is a question for the finder of fact.
2. Allstate Representatives’ Oral Instructions to Holway Describing How to Complete the Income Election Form
The plaintiff next bases his claim for misrepresentation on the statements of Allstate representatives, as related to John by Holway, concerning how to fill out the Income Election Form to select a plan which would provide a minimum of ten years of guaranteed payments. Plaintiff asserts that John relied on these *67 statements to conclude that the terms of the annuity included a ten-year minimum guaranteed payment term. Allstate counters that, in light of the written Prospectus and other documentation, John’s reliance on these oral statements to reach this conclusion was unreasonable.
To prevail on a claim for misrepresentation, the plaintiff must show that his reliance on the statement of the defendant was reasonable. Russell, 437 Mass. at 458, quoting Danca, 385 Mass. at 8. See also Restatement (Second) of Torts, §537 (recognizing element of “justifiable” reliance). In light of the potentially unclear statements concerning the terms of the annuity contained in the written documentation, the Court cannot make the determination that John’s reliance on the statements of Allstate representatives, communicated through Holway,[13] concerning how to fill out the Income Election Form to obtain the desired result of ten years of minimum guaranteed payments is unreasonable. The Court accordingly declines to resolve this claim on summaiy judgment.
3. Product Allegedly Unsuitable
The plaintiffs third basis for a claim of misrepresentation is that Allstate sold John a product that was unsuitable for a person of his age and in his circumstances. The plaintiff may not sustain a claim for misrepresentation on this basis. The plaintiff does not allege that Allstate represented that the product was suitable for John, and the representations of Holway in this regard cannot be attributed to Allstate. Accordingly, even assuming the product was unsuitable for John, plaintiffs allegation of this fact fails to support a claim against Allstate for misrepresentation.
4. Reissuance of Annuity
Nor may the plaintiff sustain a claim for misrepresentation on the basis of Allstate’s reissuance of the annuity as a plan guaranteeing payment for five, rather than ten, years. Plaintiff alleges that this action constitutes a misrepresentation because the plan John had selected was for a minimum of ten years. Plaintiff fails to explain, however, how he could have relied on this alleged misrepresentation to his detriment. In the absence of an allegation describing reliance which caused the plaintiff injury, plaintiffs claim for misrepresentation on this basis fails.
VI. Violation of General Laws, Chapter 93A
Allstate moves for summaiy judgment of the plaintiffs claim for violation of General Laws, chapter 93A. The plaintiff cross moves for summaiy judgment of this claim. The plaintiff bases his claim for violation of General Laws, chapter 93A, on alleged misrepresentations by Allstate contained in the Prospectus and other written materials and the oral instructions provided by Allstate representatives concerning how to complete the Election Form to obtain John’s desired annuiiy terms. The plaintiff also bases his claim for violation of chapter 93A on Allstate’s reissuance of the annuiiy as providing guaranteed payments for a five-year term, in light of the original terms; the unsuitability of the product for John; and Allstate’s alleged curtailment of John’s 20-day right of rescission based on Allstate’s request to complete the Income Election Form before the 20-day rescission period had elapsed.
Allstate counters that the record does not demonstrate that Allstate engaged in any unfair or deceptive acts or practices in connection with the sale or payment of the annuiiy. Specifically, Allstate alleges that it did not breach the annuity contract; that it did not make any misrepresentations; that Holway’s representations cannot be imputed to Allstate; and that any reliance on Holway’s representations concerning the annuity terms that vaiy from the written documents is unreasonable. Allstate also argues that plaintiffs claim for violation of General Laws, chapter 93A, is banred by the applicable four-year statute of limitations.
A. Statute of Limitations
Plaintiffs claims for violation of chapter 93A are not barred by the applicable statute of limitations. “Claims asserting unfair and deceptive trade practices under c. 93A are governed by a four-year limitations period with an accrual date that is determined ‘by the same principles as govern the determination of the underlying actions.’ ” Fine v. Huygens, DiMella, Shaffer & Assocs., 57 Mass.App.Ct. 397, 404 (2003), quoting Schwartz v. Travelers Indem. Co., 50 Mass.App.Ct. 672, 678 (2001). Claims for misrepresentation accrue on the date the misrepresentations could first have been discovered. Kent, 13 Mass.App.Ct. at 47. A question of fact exists as to whether John could have determined, based on the terms contained in the Prospectus and other written contract documents, that he was guaranteed a minimum number of payments only if he specified a number of years on the Election Form. A reasonable juiy could find that the Prospectus and other written documents did not alert John to that fact. A reasonable jury could further determine that Allstate’s instructions had contained a misrepresentation concerning the terms of the annuity contract which he could not have discovered until Allstate stopped annuity payments. Accordingly, the Court cannot determine, at this stage, that plaintiffs 93A claims based on Allstate’s alleged misrepresentations are barred by the applicable statute of limitations. The Court therefore considers the merits of plaintiffs chapter 93A claims below.
B. Violations Based on Alleged Misrepresentations
Plaintiff states a claim for violation of chapter 93A on the basis of the alleged oral and written misrepresentations of Allstate, but not on the reissuance of the annuiiy as providing for a five-year minimum guaranteed payment term. To prevail on a claim for violation of chapter 93A, the plaintiff must show that the defendant engaged in “unfair or deceptive acts or practices in the conduct of any trade or commerce.” G.L.c. 93A, *68 §2(a). “ Trade’ and ‘commerce’ ” are defined to include “the offering for sale . . . [or] the sale” of any services or property. G.L.c. 93A, § 1(b). A practice is deceptive “if it ‘could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.’ ” Purity Supreme, Inc. v. Attorney Gen., 380 Mass. 762, 777 (1980). “The facts underlying common law misrepresentation . . . are identical to those which underlie a chapter 93A claim founded on misrepresentation.” Acushnet Fed. Credit Union v. Roderick, 26 Mass.App.Ct. 604, 608 (1988).
The question of whether the written materials, taken as a whole, are misleading as to the question of whether the income plan “for life with guaranteed payments” includes a minimum of ten years of guaranteed payments in the absence of a specified number selected by the annuitant on the Income Election Form is a question to be resolved by the finder of fact. The Court cannot resolve it in either party’s favor at this early stage.
Allstate’s reissuance of the annuity to provide a minimum guaranteed payment term of five years, however, cannot supply a basis for violation of chapter 93A. Plaintiffs argument, effectively, is that Allstate engaged in unfair settlement practices by reissuing the annuity to provide Robert with less than he was due under the annuity contract. Where there is a good faith dispute of what is owed under a contract, however, there can be no violation of chapter 93A. E.g., Kobayashi v. Orion Ventures, Inc., 42 Mass.App.Ct. 492, 505 (1997). See Duclersaint v. Fed. Nat’l Mortgage Ass’n, 427 Mass. 809, 814 (1998). The annuity contract could reasonably be construed as providing no minimum number of years of guaranteed payments. Plaintiff cannot sustain a claim under chapter 93A on this basis.
C. Violation Based on Unsuitabiliiy of Annuity
The plaintiff cannot sustain a cause of action for violation of Chapter 93A on the basis of the unsuit-abiliiy of the annuity. The plaintiff does not allege that Allstate advised John that the investment would be appropriate, and the Court cannot attribute to Allstate the representations of Holway — an independent financial advisor employed by Citizens — on this point. Furthermore, the plaintiff has not cited any authority, nor is the Court aware of any, to support the proposition that a seller of an annuity vouches for the suitability of the annuity terms for the buyer. In the absence of such authority, plaintiffs claim for violation of chapter 93A on this basis cannot be sustained.[14]
D. Violation Based on Alleged Curtailment of Right of Rescission
The plaintiffs claim for violation of chapter 93A on the basis of Allstate’s alleged curtailment of his right of rescission likewise cannot be sustained. Plaintiff asserts that Allstate effected the alleged curtailment by having John complete the Election Form before the twenty-day period permitting rescission had elapsed. However, Allstate’s conduct could not have destroyed John’s right of rescission. Even if it could have, plaintiff does not allege that John would have elected to rescind the annuity contract within the 20-day rescission period. In the absence of a showing that the defendant’s conduct caused an injuiy, a claim for violation of chapter 93A cannot be sustained. Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc., 445 Mass. 790, 791 (2006). Plaintiffs claim for violation of chapter 93A on this basis is accordingly dismissed.
VII. Unjust Enrichment
Plaintiff next claims that Allstate was unjustly enriched. Plaintiff argues that there was no adequate consideration for the annuity and that he is therefore entitled to reimbursement of the principal investment, plus interest. Plaintiff also appears to argue that Allstate obtained John’s money under such circumstances that, in fairness and good conscience, his money should be returned. Specifically, plaintiff alleges that Allstate obtained John’s funds through fraud or other tortious conduct.
Allstate counters that there was nothing unjust about the transaction that would permit the plaintiff to recover under a theory of unjust enrichment. Specifically, it argues that John received full consideration for the purchase price in the form of the annuity he chose; that John received an income stream which he had elected after full disclosure concerning the way in which the income stream would operate; and that he received the income stream for life, the time that he had specifically elected on the Income Election Form. Allstate further argues that plaintiff is not entitled to recover under a theory of unjust enrichment because his remedy lies on contract.
“A determination that a party would be unjustly enriched ‘require[s], generally, . . . that [the] party [would] hold property under such circumstances that in equity and good conscience he ought not retain it.’ ” Sutton v. Valois, 66 Mass.App.Ct. 258, 265 (2006), quoting Stevens v. Nagel, 64 Mass.App.Ct. 136, 141 (2005). In evaluating whether a benefit is unjust, the Court considers the reasonable expectations of the parties. Comumunity Builders, Inc. v. Indian Motocycle Assocs., Inc., 44 Mass.App.Ct. 537, 560 (1998) (“Unjust enrichment, as a basis for restitution, requires more than benefit. The benefit must be unjust, a quality that turns on the reasonable expectations of the parties”). “An equitable remedy for unjust enrichment is not available,” however, “to a party with an adequate remedy at law.” Santagate v. Tower, 64 Mass.App.Ct. 324, 329 (2005). “The law will not imply a contract where there is an existing express contract covering the same subject matter.” Zarum v. Brass Mill Materials Corp., 334 Mass. 81, 85 (1956). Furthermore, the law is not concerned with the adequacy of consideration, as long as it is valuable. Graphic Arts Finishers, Inc. v. Boston Redevelopment Auth., 357 Mass. 40, 44 (1970); Cannon v. Cannon, 69 Mass.App.Ct. 414, 421 (2007).
The plaintiff cannot recover the principal under a theoiy of unjust enrichment. John chose to purchase an *69 annuity. According to the allegations, John believed the annuity involved an income stream for life, protection of his funds for use during his lifetime by preventing capture by the state or a nursing home, and payments for a minimum guaranteed term to be paid to the beneficiary if John died before the term expired. Plaintiff reaped the benefits of this deal: he protected his funds for his use during his lifetime. If he had not invested in the annuity (or made another similar deal), he would have had to turn over all his funds to a nursing home. Because he made this deal, he had the use of his funds during his lifetime. Under the circumstances, the Court cannot say that Allstate’s retention of the principal pursuant to the terms of the annuity is unjust.
Nor can the plaintiff recover the allegedly remaining payments under a theoiy of unjust enrichment. The rights of the parties as to additional annuity payments are governed by a contract. If the plaintiff is entitled to these payments, he has an adequate remedy at law— that is, on contract. If plaintiff can show that John thought he was entering into an annuity with 10 years of minimum guaranteed payments (and that he relied on the advice of Allstate agents to fill out the form), the Court can reform the contract to comport with that construction. Accordingly, plaintiffs remedy (or not) is on contract. He cannot recover in quantum meruit.
VIII. Money Had and Received
Plaintiff argues that Robert is entitled to a return of the full amount of John’s initial investment under a theoiy of money had and received because (1) John entrusted the funds to Allstate for the purpose of investing them for his benefit; (2) Allstate allegedly failed to disclose the terms of the annuity (and specifically the fact that there would be no payments made after John’s death); and (3) Allstate allegedly effectively swindled John because “[n]o one but a cheat would suggest a 72 year old man spend his life savings ... to receive a few months of... payments and lose the balance at death.” Allstate counters that there is nothing inequitable about this purchase of an annuity.
“An action for money had and received lies to recover money which should not injustice be retained by the defendant, and which in equity and good conscience should be paid to the plaintiff.” Cannon v. Cannon, 69 Mass.App.Ct. 414, 423 (2007). In the context of a contract, in order for defendant’s retention of money received to be unfair, the plaintiff must allege that consideration failed, e.g., Rayner v. McCabe, 319 Mass. 311, 314 (1946); see Cohen v. Whitman, 236 Mass. 471, 472 (1920) (“A wrongful and entire failure by the defendant to perform the contract authorized its rescission by the plaintiff, and entitled him to recover the amount paid, upon a count for money had and received”); Stevens v. Nagel, 64 Mass.App.Ct. 136, 140-41 (2005) (“Reduced to essentials, the complaint sketches a claim for restitution to the extent that, without giving any value, Charles received from Helen money that belonged to the plaintiffs. Here, as in National Shawmut Bank of Boston v. Fidelity Mutual Life Insurance Co., 318 Mass. 142, 150 (1945), ‘[t]he fundamental question ... is whether [Charles] received money which in equity and good conscience belongs to the plaintiffls]. If so, [Charles’s estate] must restore it. The fact that the legal title to the money passed to [Charles] is not significant.’ ”) (footnote omitted), or that the money was obtained by wrongful conduct, see, e.g., Stevens v. Nagel, 64 Mass.App.Ct. at 137 (embezzlement).
John made a deal with Allstate for the purchase of an annuity. He chose to use the better part of his life savings to purchase an income stream for life and to protect the principal from a nursing home. According to the facts as alleged, he may also have thought he was obtaining a guaranteed minimum number of payments. Where, as here, the defendant gave valuable consideration — in the form of an income stream for life and protection of the principal from capture by the state or a nursing home— for the purchase of the product, the plaintiff cannot recover the payment he made to purchase the product by arguing that John was swindled.
Nor can the plaintiff recover the principal on the basis that the principal was obtained by wrongful conduct and specifically failure to disclose the terms of the annuity. The plaintiff does not make any allegation that John expected a return of the entire principal amount plus interest. Rather, the plaintiff alleges that Holway represented that, in exchange for the purchase of the annuity, John would receive an income stream for life, protection of his assets from a nursing home, and ten years of guaranteed minimum payments. In light of plaintiffs allegations concerning Holway’s representations of what the deal entailed, the Court cannot permit recovery of the principal amount John invested in the annuity based on a theoiy of money had and received.
Furthermore, for the same reason recoveiy of the alleged ten years of guaranteed minimum payments is not appropriate under an unjust enrichment theoiy— because the question of whether and how many guaranteed minimum payments to which John was entitled is governed by a contract — recoveiy of the alleged guaranteed minimum payments is not appropriate under a theoiy of money had and received. Plaintiff cannot maintain a claim under a theoiy of money had and received.
IX. Promissory Estoppel
Plaintiff does not clearly identify the specific promise on which he bases his claim for promissoiy estop-pel. In support of his claim, the plaintiff does state, however, that half-truths can cause the defendant to incur liability and that “[n]o one but a cheat would would suggest a 72 year old man spend his life savings of $224,817 ... to receive a few months of $1,700 payments and lose the balance at death.” Allstate argues that it did not make any promise to plaintiff— with the exception of a promise to make payments for John’s life — that would permit recoveiy of additional payments under this theoiy.
*70 “Circumstances that may give rise to an estoppel are (1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission.” Sullivan v. Chief Justice for Admin. & Mgmt. of the Trial Court, 448 Mass. 15, 27-28 (2006), quoting Bongaards v. Millen, 440 Mass. 10, 15 (2003), and cases cited. To recover under a theory of promissory estoppel, Robert must also show that John reasonably relied on the representation. Sullivan, 448 Mass. at 28, quoting Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 125 (1992). “(T]he doctrine of estoppel is not applied except when to refuse it would be inequitable.” Sullivan, 448 Mass. at 28, quoting Cleaveland v. Malden Sav. Bank, 291 Mass. 295, 297 (1935) (internal quotation and citation omitted).
Plaintiff cannot sustain a claim for promissory estop-pel against Allstate on the basis of the financial advice provided by Holway. Nor can plaintiff recover the initial investment John made for the purchase of the annuity under the theory of promissory estoppel; plaintiff does not identify any promise made that would induce John to rely on the fact that he would receive all his funds back at the end of the annuity term. Furthermore, plaintiff does not allege that Allstate represented that the annuity would be a suitable investment vehicle for him. Rather, according to plaintiffs allegations, John knew that he would not receive more than ten years of payments if he died either before the ten years had elapsed or at the end of that period. Plaintiff has not identified a promise that would permit recovery under a theory of promissory estoppel. Plaintiff cannot recover under this theory.
X. Breach of Fiduciary Duty
Allstate argues that plaintiffs claim for breach of fiduciary duty should be dismissed because an insurer does not owe a fiduciary duty to its insured absent “special circumstances.” Even assuming that Allstate did owe a fiduciary duty to John, Allstate argues that it did not breach that duty. In support of its claim, Allstate argues that it made full and accurate disclosures about the annuity product. Finally, Allstate argues that the statute of limitations bars plaintiffs claim because the Ferolas were on notice of any breaches with respect to their income election as of August 2000.
Plaintiffs claim against Allstate for breach of fiduciary duty cannot be sustained. Allstate did not owe John a fiduciary duty. Generally speaking, insurers do not owe their insureds a fiduciary duty. Szymanski v. Boston Mut. Life Ins. Co., 56 Mass.App.Ct. 367, 381-82 (2002). A fiduciary duty may arise in “special circumstances.” Id. at 381. No such special circumstances exist in this case. In Baldwin Crane & Equipment Corp. v. Riley & Rielly Insurance Agency, Inc., 44 Mass.App.Ct. 29 (1997), the Appeals Court determined that the insurer did not have a duty to ensure that the insureds “understood the full import of the meaning of ‘minimum premium.’ ” 44 Mass.App.Ct. at 31.
Under the circumstances alleged here, Allstate cannot be held liable for a breach of fiduciary duty.
X3. Malpractice
Plaintiff appears to base his claim for malpractice on the financial advice John received from Holway that the purchase of the annuity would advance his financial objectives and based on Allstate’s alleged misrepresentation concerning the terms of the annuity John purchased.
Plaintiff has not cited any authority, and the Court is aware of none, to permit an insured to hold an insurer liable for malpractice, especially in these circumstances. Despite plaintiffs assertion that “(n]o one but a cheat would suggest a 72 year old man spend his life savings of $224,817 ... to receive a few months of $1,700 payments and lose the balance at death,” plaintiff has not alleged facts that would show that Allstate is responsible for this choice. Instead, the complaint alleges that the financial advice John received was given by Holway, a financial advisor employed by Citizens, not Allstate. Plaintiffs claim for malpractice on the basis of the financial advice rendered by Holway or the fact that Allstate allowed John to purchase this annuity given his circumstances cannot be sustained.
Nor does plaintiffs claim for malpractice on the basis of an alleged misrepresentation fare better. To be liable for malpractice, a defendant must have had a duty to the plaintiff and have breached that duty, causing the plaintiff to incur damages. Plaintiff has not cited any authority to support the proposition that an insurer owes a duty to an insured and can be liable to the insured for malpractice. The plaintiff cannot sustain a claim for malpractice.
XII. Negligence
Plaintiff bases his claim for negligence on “Allstate’s sale of this annuity and its practices in supervising Holway to do so.” PL’s Opp. to Def.’s Statement of Facts and Legal Elements ¶167. Plaintiff argues that Allstate sold the annuity. In particular, plaintiff appears to argue that the guidance provided by Allstate to Holway as to how to fill out the income plan election form and Allstate’s “prepar[ation] for Holway [of] a ten-year guaranteed payment illustration to give to the Ferolas” are the actions that make Allstate liable for negligence. Id., ¶5. Plaintiff also bases his claim for negligence on the alleged statement in the Prospectus that there is always a death benefit. Id., ¶90.
To be liable for negligence, the defendant must have breached a duty which the defendant owed to the plaintiff or another person and thereby caused that person harm. Delaney v. Reynolds, 63 Mass.App.Ct. 239, 241 (2005). “A precondition to this duty is, of course, that the risk of harm to another be recognizable or foreseeable to the actor.” Afarian v. Massachusetts Elec. Co., 449 Mass. 257, 262 (2007), quoting Jupin v. Kask, 447 Mass. 141, *71 147 (2006). Although an insurer does not as a general matter owe a duty to an insured or potential insured absent special circumstances, Szymanski, 56 Mass.App.Ct. at 381, the Supreme Judicial Court “ha[s] recognized that ‘[a]s a general principle of tort law, every actor has a duly to exercise reasonable care to avoid physical harm to others.’ ” Afarian, 449 Mass. at 262, quoting Jupia, 447 Mass. at 147.
A. Negligence Based on Actions of Allstate Representatives
The Court cannot at this juncture dismiss plaintiffs claim for negligence. According to the plaintiffs allegations, Allstate representatives instructed Holway as to how to fill out the Income Election Form to obtain the desired result of a minimum of ten years of guaranteed payments. The finder offact could find that once Allstate, through its representatives, advised John, through Holway, concerning how to fill out the form to obtain the desired result, it assumed a duty to act with reasonable care. It could also be found that Allstate breached that duty by providing inaccurate advice, thereby achieving a different result. Because the harm to John and his beneficiaiy was foreseeable and the harm the proximate result of the alleged actions, the plaintiff could recover under a theory of negligence.
Nor does the statute of limitations serve as a bar to plaintiffs claim. The Court determines the date of accrual with reference to the date the plaintiff could have discovered the harm rather than the date of the negligent conduct. Because the plaintiff could not have discovered the harm until he did not receive payments as a beneficiaiy under the policy, the action is timely and not barred by the statute of limitations.
B. Negligence Based on the Prospectus
The plaintiff cannot, however, sustain a claim for negligence on the basis of the Prospectus. The language of the Prospectus, although potentially misleading, does not actually state that the annuitant is always entitled to a death benefit. Rather, a parsing of the language indicates that the term “death benefit” applies only to annuitants who predecease the payout start date. That is, if the annuitant has not received any payments, the beneficiaiy of the annuitant will be entitled to a death benefit. Accordingly, the plaintiff cannot base his claim for negligence on the language of the Prospectus.
XIII. Negligent Supervision
The plaintiff bases his claim for negligent supervision on Allstate’s alleged “negligent supervision” of Holway by permitting him to effectuate a sale of an annuity that did not conform to the terms Holway represented. Specifically, plaintiff alleges that Allstate negligently permitted Holway to leave a blank when electing the income plan option, thereby preventing John from obtaining a minimum number of guaranteed payments which Allstate, through Holway and written documents, had allegedly promised.
Allstate counters that it had neither the duty nor the ability to supervise Holway. In support of its contention, Allstate states that Holway was an employee of Citizens and was supervised, trained, and paid by Citizens.
To prevail on a claim for negligent supervision, a plaintiff must demonstrate that the defendant was the employer of the negligent actor or that the defendant retained the right to control the work of the negligent actor in some aspect. Chiao-Yun Ku v. Town of Framingham, 53 Mass.App.Ct. 727, 730 (2002). Stated differently, the negligent actor must not be entirely free to do the work in his own way. St. Germaine v. Pendergast, 411 Mass. 615, 622-23 & n.11 (1992), quoting from Restatement (Second) of Torts §414 cmt. c. Holway was an actor independent of Allstate. Allstate did not retain the right to control any aspect of Holway’s work. Plaintiff cannot maintain a claim for negligent supervision.
XIV. Accounting, Declaratory Judgment, Constructive Trust
Plaintiff claims entitlement to an accounting, a declaratoiy judgment that the annuity is void or voidable at the plaintiffs option and that he is therefore entitled to the amount of the initial investment plus interest, and a constructive trust on the initial investment in the annuity plus any interest it has earned.
Allstate argues that plaintiffs claim for an accounting should fail because he has not set forth grounds describing why he is entitled to an accounting. Allstate further argues that plaintiffs claims for a declaratoiy judgment and constructive trust should be dismissed because, as it has already shown, it has not engaged in practices that would entitle plaintiff to this relief.
A determination of whether plaintiff is entitled to any of these remedies depends on the resolution of plaintiffs substantive claims, which the Court, as discussed above, cannot do on this summaiy judgment record. At this stage, therefore, the Court cannot affirmatively resolve or dismiss these claims.
XVII. Massachusetts Securities Laws
Plaintiffs final claim is for violation of the Massachusetts securities laws. Plaintiff does not explain, however, how Allstate has violated the securities laws. Nor does the Court see, under the facts as alleged, how Allstate’s actions could provide a basis for violation of the securities laws. Accordingly, plaintiffs claim for violation of the Massachusetts securities laws cannot be sustained.
ORDER
It is therefore ORDERED that plaintiffs motion for summaiy judgment of his claims for violation of chapter 93A and negligent misrepresentation be DENIED. It is further ORDERED that defendant’s motion for summaiy judgment of plaintiffs claim for breach of contract be ALLOWED insofar as it is based on an implied contract and the unsuitability of the annuity and otherwise be DENIED. Plaintiffs claim for breach of the implied cove *72 nant of good faith and fair dealing is DISMISSED. Defendant’s motion for summaiy judgment of the misrepresentation claims is ALLOWED insofar as they allege that the unsuitability of the product and the reissuance of the annuity provide a basis for the claims; defendant’s motion as to these claims is otherwise DENIED. Defendant’s motion for summaiy judgment of the chapter 93A claim is ALLOWED insofar as it alleges that the reissuance of the annuity, the alleged unsuitabiliiy of the annuity, or the alleged curtailment of John’s right of rescission provides a basis to support the claim and is otherwise DENIED. Defendant’s motion for summaiy judgment of plaintiffs claims for conversion, unjust enrichment, money had and received, promissory estop-pel, breach of fiduciary duty, malpractice, negligent supervision, and violation of the Massachusetts securities laws is ALLOWED. Defendant’s motion for summaiy judgment of plaintiffs claim for negligence is ALLOWED insofar as it is based on the language of the Prospectus and is otherwise DENIED. Defendant’s motion for summary judgment of plaintiffs claims for relief including an accounting, a declaratory judgment, and the imposition of a constructive trust, is DENIED.
It is further ORDERED that the parties’ motions to strike be DENIED.

A separate action against the agent and Citizens Bank is currently proceeding in arbitration.

Upon request of the Court, the parties provided further briefing on the issue of whether reasonable reliance should be decided on summaiy judgment. Allstate argues that the Court should not consider Ferola’s response to its supplemental brief, however, because, it alleges, Ferola’s brief is not limited to the one issue the Court requested briefed and Allstate’s brief addressed. Allstate requests, in the event that the Court does consider the contents of Ferola’s brief in its entirety, that the Court file and consider the arguments contained in Allstate’s reply. The Court has considered all papers provided by the parties in deciding this motion.

Although John did not expect to go into a nursing home at the time he purchased the annuity, he was planning for the possibility that he would need the care of a nursing home in the future. Deposition of Robert J. Ferola at 157.

Holway’s understanding of the ten-year minimum period was based on an illustration provided by Mr. Lastrina of Allstate. Holway Deposition at 63. Holway did not read the prospectus. Id. at 64.

See Deposition of Robert Ferola at 113 (stating that he understood that investing in a variable annuity would be safer than investing in savings accounts); see also id. at 114 (‘The way the annuity was described to us, it sounded as if it [were] safer, that it was almost, was not, but kind of a guarantee that the money would always be there less whatever the check that was paid out that month”).

A1 though John continued to work, he had already amassed savings that he planned to invest.

The testimony of Robert indicates that Holway filled out the form. But see Deposition of Robert J. Ferola at 292 (indicating that the recommendation as to how to fill out the form came from Holway). Both Robert and Holway testified that their understanding was that Holway filled out the form in accordance with John’s request for payment for his lifetime, with minimum guaranteed payments for ten years.

Holway indicated in a deposition that he had represented to the Allstate representatives that John wanted to elect an annuity for life with a minimum of ten years of guaranteed payments, and that the Allstate representatives instructed him as to the way to complete the form in order to obtain that result for John.

Robert also brought a similar action against Citizens Bank. That action is pending in arbitration.

 Generally speaking, a breach of the implied covenant of good faith and fair dealing entails preventing one’s contracting partner from obtaining the fruits of the bargain without actually breaching the contract. See, e.g., Centex Corp. v. United States, 395 F.3d 1283, 1304 (Fed. Cir. 2005) (finding a breach of the implied covenant of good faith and fair dealing in deal in which Federal Government induced successful banks to acquire failing thrifts by furnishing them with tax benefits for so doing but subsequently passed legislation preventing the banks from obtaining any tax benefit from having acquired the failing thrifts).

Nor has the plaintiff shown any evidence of bad faith on the part of Allstate in its alleged failure to carry out the terms of the contract. See Fortune v. National Cash Register Co., 373 Mass. 96, 104-05 (1977) (holding that abusing the timing of termination of an employment contract to avoid paying commissions already earned by the employee was in bad faith and accordingly violated the implied covenant of good faith and fair dealing). The terms of the contract are ones about which reasonable people could disagree. Accordingly, any failure on the part of Allstate to pay Robert the remainder of payments corresponding to a minimum term of ten years cannot evidence bad faith on the part of Allstate or support a claim for breach of the implied covenant of good faith and fair dealing.

The fact that the alleged misrepresentations of Allstate representatives were not communicated direcdy to John does not affect the Court’s disposition of this claim. See, e.g., Golber v. BayBank Valley Trust Co., 46 Mass.App.Ct. 256, 258-59 (1999), citing, inter alia, the Restatement (Second) of Torts §552 (1977) (“A person who makes representations under circumstances where he knows that the person receiving the representations will be relying on them, has a duty to exercise reasonable care in making the representations”); Reisman v. KPMG Peat Marwick LLP, 57 Mass.App.Ct. 100, 110 (2003) (holding that the defendant could be held liable for a misrepresentation to plaintiffs “among those whom [the defendant] had reason to expect would rely on its statements”); accord Restatement (Second) of Torts §533 (“The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved”). See also Cahaly v. Benistar Prop. Exch. Trust Co., 68 Mass.App.Ct. 668, 681 (2007) (“[The defendant’s] direct personal contact with the plaintiffs was not a requirement for a finding of misrepresentation in this case . . .”).

Even assuming that the claim could be sustained on this basis, the Court cannot say that the annuity product was unsuitable for John. The Court notes that the annuity achieved at least one of his alleged financial goals — of shielding John’s funds from the state and a nursing home. Assuming the merits of the question of suitability were reached, then, the question of suitability of the product for a person in John’s circumstances and with his financial goals at the time of purchase would have to be resolved by the finder of fact.